KINZIE GITTINGS

*v.*

GEORGE C. NELSON.

1. LIEN—*pledge of property not in existence.* An agreement in the spring, before the existence of a crop, to give another a lien upon the crop to be raised that year, for property purchased and for advances, or that the crop shall belong to the creditor until he is paid, can not operate upon the crop after being raised, as a transfer by way of pledge or mortgage, or otherwise, until at least after possession taken by the creditor, and before possession so taken the crop will be liable to an execution against the debtor.

2. LANDLORD'S LIEN—*upon crop raised.* Where a landlord rents farming land for a share of the crop, which he receives, and also rents a house and lot for a cash rent, if he seeks to enforce a lien on the balance of the crops grown on the farming land for the rent due on the house and lot, he must show that there was but one demise as to the whole premises. If the demise of the house was separate and distinct, there will be no lien on the crop as to the rent due on the house.

APPEAL from the Circuit Court of Henderson County; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was a case of the trial of the right of property, before a justice of the peace, in respect of three cribs of corn claimed by Nelson, which had been levied upon by a constable as the property of one Palmer under an execution in his hands against Palmer.

The evidence on the part of the claimant, Nelson, tended

to show that in the fall of 1874 he rented to Palmer, for the year 1875, two certain pieces of land of about forty acres each, situate, one in Henderson, the other in Hancock county, to cultivate upon shares, Palmer to have one-half of the crop raised, and Nelson the other half, the latter to take his half of the crop in the field ungathered; that Nelson also at the same time leased to Palmer a house and about ten acres of ground for one year, commencing March 1, 1875, for which Palmer was to pay $105 cash; that in the latter part of March, 1875, before Palmer began to plow, he bargained with Nelson for a team and wagon at the price of $300, the same to remain Nelson's until paid for; and at the same time it was agreed that Nelson should furnish Palmer supplies for his teams and family, and that Palmer's share of the crop should be Nelson's until the latter got his pay.

The whole amount of the indebtedness of Palmer to Nelson, including rent of house and ten acres, team and wagon, and supplies furnished, was $580.

The crop raised upon the two pieces of land was corn. When Palmer got ready to gather corn, he inquired of Nelson what he should do with the corn; the latter told him to get rails and crib it up on the place where Palmer lived. This was done by Palmer, and the corn so cribbed up, consisting of three cribs, is that in controversy. It was raised on the tract of land in Henderson county.

The execution against Palmer for $103.90, and costs, came into the hands of the constable, September 20, 1875, and was levied upon the corn, November 13, 1875.

Nelson signed the delivery bond to the constable for the delivery to him of the three cribs of corn.

After the levy of the execution, Nelson took back the team and wagon; and, also, after that time, Palmer gathered his share of the corn on the land in Hancock county, amounting to between 800 and 900 bushels, 900 as Palmer says on cross-examination, and let Nelson have the same, the latter allowing therefor 25 cents per bushel.

The cribs of corn levied on, amounting to 477 bushels, as Nelson and Palmer testify, Nelson sold, in March, 1876, for 31 cents per bushel, and received the pay. This proceeding before the justice of the peace was commenced November 15, 1875. On appeal from the justice of the peace to the circuit court, a verdict and judgment were rendered in favor of the claimant, Nelson, and Gittings, the execution creditor, appealed to this court.

Messrs. MANIER & MILLER and Mr. C. C. PRESTON, for the appellant.

Messrs. MILLER & FROST, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

There seems to us to have been a clear wrong here done to the execution creditor.

Certainly, Nelson could have no claim to the corn further than as security for the indebtedness from Palmer to him. Taking the quantity of the corn received from Palmer's share of the crop raised on the Hancock county land as 850 bushels, then, by the receiving of that, and the taking back of the team and wagon, Nelson was satisfied the full amount of all the indebtedness to him from Palmer, with the exception only of $67.50. After the satisfaction of this last amount from the corn levied on, there would have been left quite a margin to be appropriated for the payment of the execution, and we see no just reason why it should not have been so applied — why at least the property in the corn should not have been found to be in the constable, subject to the indebtedness from Palmer to Nelson.

But we are inclined to think that the property should have been found to be in the constable simply, without even the qualification above. We do not consider that there is any lien here to be asserted against the execution, other than a landlord's lien for rent, as given by the statute. Any agreement in the spring of 1875, that Nelson should

have a lien upon the crop to be raised that year for the payment of a team and wagon sold to Palmer, or for hay and corn to be furnished for his teams, or for provisions for his family, or that the crop should be Nelson's until such payment should be made, would have been a contract in reference to property not then in existence, and could not operate upon the crop, after being raised, as a transfer of it by way of pledge or mortgage, or otherwise, at least not until after the taking possession thereof by Nelson.

At the time the execution came into the officer's hands, September 20, 1875, Nelson had done nothing toward taking possession of the property ; creditors and purchasers had the right to regard it as Palmer's, and the execution from that date bound it as his property, unaffected by any such secret, verbally given lien or agreement, as above stated.

As respects any lien for rent, the statute gives the landlord a lien on all crops grown on the demised premises during the year.

The rent here for the two forty acres of land was paid by one-half of the crops, as agreed.

Is the crop grown upon one of these forty-acre tracts subject, under the statute, to a lien for the payment of the $105 cash rent agreed to be paid for the house and ten acres of land? The evidence is meager in the respect of showing any connection between the two tracts of land and the house and ten acres, as being one demise. All that appears is, that also at the same time there was a lease of the house and ten acres.

The fact that there was a distinct renting of the two forty-acre tracts for one-half of the crops for no specified time, but to raise a crop on shares for the season or year 1875, and that there was a distinct renting of the house and ten acres for $105 cash rent, and for the definite time of one year from March 1, 1875, tends to show them to be separate demises.

The construction is to be a strict one. We incline to the view that the evidence fails to show satisfactorily that there

was a lien here upon this corn grown upon one of the forty-acre tracts for the rent of the house and ten acres of land. This being so, would leave the officer's claim of property absolute as against Nelson.

The view taken renders it unnecessary to consider the effect of the giving by Nelson of the delivery bond.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*